IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

LIZ MARIE BELTRAN VALDES
EMANUEL ROBLES ROBLES

    Debtors

CASE NO. 23-00180 (ESL)

CHAPTER 13

---

LIZ MARIE BELTRAN VALDES
EMANUEL ROBLES ROBLES

    Plaintiff(s)

vs.

EMPRESAS BERRIOS, INC.

    Defendant

ADV. PROC. 23-00043

FILED AND ENTERED 11/6/2025

## OPINION AND ORDER

This adversary proceeding is before the court upon the *Motion for Summary Judgment* (dkt. #66) and *Statement of Facts in Support of Motion for Summary Judgment* (the "**Debtor-Plaintiffs' Statement of Facts**", dkt. #67) filed by Debtor-Plaintiffs on August 7, 2025, and the *Opposition to Plaintiffs' Motion for Summary Judgement and, in the Alternative, Motion to Dismiss for Failure to State a Claim* (the "**Opposition to Summary Judgement**", dkt. #69) and *Memorandum of Law in Support of Defendant's Opposition to Plaintiffs' Motion for Summary Judgement* (the "**Defendant's Statement of Facts**", dkt. #70) filed by Empresas Berrios, Inc. ("**Defendant**") on August 15, 2025.

For the reasons stated herein, the *Motion for Summary Judgment* (dkt. #66) is hereby DENIED.

-1-

<u>Legal Issue</u>

The issue before this court is whether Defendant's post-petition automated debit on account of a pre-petition debt constitutes a willful violation of the automatic stay.

<u>Position of the Parties</u>

Debtor-Plaintiffs contend that "[a]fter the automatic stay was implicated, the Defendant continued to debit from Plaintiffs' bank account in order to apply such funds to the Pre-Petition Claim… [N]otwithstanding Defendant's actual and constructive knowledge of the Automatic Stay Order, Defendant continued its collection actions against the Plaintiffs on the Pre-Petition Claim in violation of the Automatic Stay" (dkt. #66, p. 2).

Defendant's main ground for the denial of the motion is that "Plaintiffs' motion is procedurally defective because they have failed to proffer any competent evidence of actual damages as required under 11 U.S.C. § 362(k)(1)" (dkt. #69, p. 2). Defendant also alleges that it did not violate the automatic stay because it "followed the bankruptcy process by filing a proof of claim and accepting payment through the Chapter 13 plan" (<u>id.</u>, p. 3). Ultimately, Defendant concedes that "[i]t is undisputed that the automatic stay arose upon Plaintiffs' Chapter 13 petition on January 27, 2023, and that EBI had notice of the bankruptcy (through the court's notice of filing on Jan. 30, 2023). It also appears that one or more automatic loan payments were indeed processed from Plaintiffs' account in the weeks following the petition. However, the question is whether these post-petition transactions amount to a willful violation of the stay as defined by controlling law" (<u>id.</u>, p. 5).

Defendant's legal argument as to whether the transaction constitutes a willful violation is the following:

> Under First Circuit precedent, a "willful" stay violation does not require a showing of malicious intent or bad faith; rather, "[t]he standard for a willful violation… is met if there is knowledge of the stay and the EBI intended the actions which constituted the violation." In other words, if a creditor knows about the bankruptcy and deliberately acts in a way that violates the stay, the violation is willful regardless of whether the creditor believed (in good faith)

that it had a right to act.

That said, the willfulness inquiry can still involve factual nuance – for example, whether and when the creditor actually received notice of the filing in time to prevent the action. Here, there is room for factual debate as to EBI's knowledge and intent at the time of the alleged improper debits. Plaintiffs contend that EBI had actual notice by January 30, 2023, yet the continuation of automated debits in February or March could have been the result of a brief lapse in communication or clerical error rather than a conscious decision to flout the stay.

Notably, once EBI unquestionably became aware of the issue (no later than when it filed its Proof of Claim on March 1, 2023), EBI undertook no further collection actions outside the bankruptcy case. The record is clear that after the initial post-petition incident, EBI's only course was to participate in the Chapter 13 plan administration – it did not harass Plaintiffs with phone calls, did not file a separate lawsuit, did not repossess any property, etc.

All payments after that point came through the Trustee's plan distributions. These facts permit an inference that any stay violation was technical and short-lived, not willful in the egregious sense. While intent in the § 362(k) context does not require a specific intent to violate the stay, it does require that the actor meant to do the act which violates the stay.

A genuine issue of fact exists as to whether the timing and circumstances of the postpetition debits demonstrate a willful act or a promptly corrected oversight. Given the ambiguities – for example, whether an automated debit that occurred just days after notice was sent could have been stopped in time – the determination of willfulness should be reserved for trial.

Id., pp. 5-6.

Uncontested Material Facts

After reviewing the record, including *Debtor-Plaintiffs' Statement of Facts* (dkt. #67) and *Defendant's Statement of Facts* (dkt. #70)[1], the court finds that the following material facts are uncontested:

---

[1] Defendant failed to comply with Local Civil Rule 56(c) by not submitting a separate statement admitting, denying, or qualifying Debtor-Plaintiffs' proposed material facts with record citations. As such, *Debtor-Plaintiffs' Statement of Facts* (dkt. #67) are deemed admitted as unopposed.

1. On June 6, 2021, Debtor Lizmarie Beltran Valdes entered into an installment sales agreement with Defendant, which outlines the following financing repayment terms: twenty-three (23) installments of $45.70 beginning on July 6, 2021, and a final installment of $45.92 ending on June 6, 2023. See Bank. Case No. 23-00180, Claims Register, Proof of Claim No. 5-1, pp. 6-10.

2. On January 27, 2023, Debtor-Plaintiffs filed a voluntary petition under Chapter 13 of the Bankruptcy Code. See Bank. Case No. 23-00180, dkt. #1.

3. The Debtor-Plaintiffs included "Mueblerias Berrios" in Schedule E/F as a nonpriority unsecured claim in the amount of $296.00 as of petition date, that is, January 27, 2023. and in the Creditors' Matrix. See Bank. Case No. 23-00180, dkt. 1, p. 27, item 4.5, and p. 69.

4. Defendant was notified of Plaintiffs' bankruptcy petition. See *Notice of Chapter 13 of Bankruptcy Case*, Bank. Case No. 23-00180, dkt. #7; *Certificate of Service*, Bank. Case No. 23-00180, dkt. #9; *Opposition to Summary Judgement*, dkt. #69, p. 5 (Admission: "EBI had notice of the bankruptcy (through the court's notice of filing on Jan. 30, 2023)").

5. On March 1, 2023, Defendant filed Proof of Claims No. 5, as secured in the amount of $172.28. See Bank. Case No. 23-00180, Claims Register, Proof of Claim No. 5-1.

6. On March 22, 2023, Attorney Nanette Rickenbach entered a Notice of Appearance on behalf of Defendant. See Bank. Case No. 23-00180, dkt. #19.

7. On May 11, 2023, the Plaintiffs filed an *Amended Chapter 13 Plan dated May 11, 2025*, addressing the objection that had been filed by Defendant to the prior plan and providing for payment in full of Proof of Claim No. 5-1. See Bank. Case No. 23-00180, dkt. #24, pp. 3-4, item 3.7.

8. On June 30, 2023, the court entered an order confirming the *Amended Chapter 13 Plan dated May 11, 2025*. See Bank. Case No. 23-00180, dkt. #36.

9. Following Debtor-Plaintiffs' petition for relief, Defendant continued to debit funds from Debtor-Plaintiffs' bank account on account of the pre-petition debt. See Statement of

Uncontested Fact No. 8 and 9, dkt. #67, p. 3, ¶¶ 8-9; *Unworn Declaration Under Penalty of Perjury*, dkt. #66-1, ¶ 4; *Opposition to Summary Judgement*, dkt. #69, p. 5 (Admission: "[O]ne or more automatic loan payments were indeed processed from Plaintiffs' account in the weeks following the petition.").

10. On June 12, 2023, the Debtor-Plaintiffs filed the instant adversary proceeding complaint against the Defendant for willful violation of the automatic stay and unjust enrichment. See dkt. #1.

11. As of this date, ten proof of claims have been filed for a total amount of $90,251.67, of which $32,359.19 are secured. Therefore, the claim filed by Mueblerias Berrios accounts for 0.002% of the claims filed, and 0.005% of the secured claims. See Bank. Case No. 23-00180, Claims Register.

Applicable Law and Discussion

(A)    Standard for Motion for Summary Judgment

Under Fed. R. Civ. P. 56, made applicable to adversary proceedings under Fed. R. Bankr. P. 7056, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See also Fed. R. Bankr. P. 7056; Celotex Corp. v. Catrett, 477 U.S. 317, 322-332 (1986); In re Colarusso, 382 F.3d 51 (1st Cir. 2004); Alicea v. Wilkie, 2020 WL 1547064, 2020 U.S. Dist. LEXIS 57213 (D.P.R. 2020).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine dispute as to any material fact or in which only a question of law is involved." Charles A. Wright, Arthur R. Miller, & Mary K. Kane, 10A Federal Practice and Procedure § 2712 (4th ed., West 2022). "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. (footnotes omitted). "[S]ummary judgment is not a substitute for the trial of disputed fact issues. Accordingly, the court … is empowered [only] to determine whether there are issues to be tried." Id. (footnotes omitted). See

also Bernier v. Treasury Dep't (In re Bernier), 2022 WL 17096264, at *5, 2022 Bankr. LEXIS 3283, at *17-18 (Bankr. D.P.R. 2022) ("the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain.").

"A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008), quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir.1996). See also Andino-Oquendo v. Federal National Mortgage Association, 2023 WL 2245072, at *1, 2023 U.S. Dist. LEXIS 34375, at *2 (D.P.R. 2023), quoting Alicea, 2020 WL 1547064, at *2, 2020 U.S. Dist. LEXIS 57213, at *4. A fact is material only if it is determinative of the outcome of the litigation. See Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), *cert. denied*, 425 U.S. 904 (1976); Maymí v. P.R. Ports Auth., 515 F. 3d 20, 25 (1st Cir. 2008); In re Financial Oversight and Management Board for Puerto Rico, 650 B.R. 334, 353 (D.P.R. 2023), quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) ("Material facts are those that 'possess[ ] the capacity to sway the outcome of the litigation under the applicable law,' and there is a genuine factual dispute where an issue 'may reasonably be resolved in favor of either party.' ").

When considering a petition for summary judgment, the court must review the evidence in the light most favorable to the nonmoving party. See Thompson, 522 F.3d at 172, citing Franceschi v. United States VA, 514 F.3d 81, 83 (1st Cir. 2008). The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. See Adickes v. Kress & Co., 398 U.S. 144, 157 (1970); López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991); Alicea, 2020 WL 1547064, at *2, 2020 U.S. Dist. LEXIS 57213, at *4. It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. See Bias v. Advantage International, Inc., 905 F.2d 1558, 1560–61 (D.C. Cir. 1990), *cert. denied*, 498 U.S. 958 (1990).

To that end, L. Civ. R. 56(b) requires a movant to include a separate, short, and concise statement of material facts and to support each factual assertion with a citation to the evidentiary record. See L. Civ. R. 56(b), (e). "The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment," and "shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." L. Civ. R. 56(e).

The moving party cannot prevail if any essential element of its claim or defense requires trial. See López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. See Celotex, 477 U.S. at 325; Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988). In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. See Kennedy v. Josephthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987); Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions, and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. See Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. See López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. See Adickes, 398 U.S. at 159.

(B)     The Automatic Stay – 11 U.S.C. § 362

The automatic stay provision is one of the fundamental debtor protections in the Bankruptcy Code. It gives debtors a "breathing spell" from creditors and stops all collection efforts, all harassment, and all foreclosure actions. H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 340-342 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 54-55 (1978), reprinted in 1978

U.S.C.C.A.N. 5787, 5840, 6296-97. See also ICC v. Holmes Transp., Inc., 931 F.2d 984, 987 (1st Cir. 1991); In re Smith Corset Shops, Inc., 696 F.2d 971, 977 (1st Cir. 1982), "It allows the debtor to attempt a repayment or reorganization plan or simply be relieved of the financial pressures that drove him into bankruptcy." Id., In re Smith Corset Shops, Inc., 696 F.2d at 977.

Section 362 of the Bankruptcy Code provides that, upon filing for bankruptcy, a debtor is immediately protected by an automatic stay that prohibits, inter alia, the "continuation ... or other action or proceeding against the debtor that was or could have been commenced before the [bankruptcy petition] or to recover a claim against the debtor that arose before the commencement of the case under this title" and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case ..." 11 U.S.C. § 362(a)(1) and (6). "This respite enables debtors to resolve their debts in a more orderly fashion and at the same time safeguards their creditors by preventing different creditors from bringing different proceedings in different courts, thereby setting in motion a free-for-all in which opposing interests maneuver to capture the lion's share of the debtor's assets." Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997) (citations omitted). "Section 362(a)(6) is intended to prevent creditor harassment of the debtor in attempting to collect pre-petition debts. The conduct prohibited ranges from that of an informal nature, such as by telephone contact or by dunning letters, to more formal judicial and administrative proceedings that are also stayed under subsection (a)(1)." 3 Collier on Bankruptcy ¶ 362.03[8][a] (16th ed. 2025).

"The automatic stay imposes on non-debtor parties an affirmative duty of compliance." Whitman-Nieves v. P.R. Fed. Credit Union (In re Whitman-Nieves), 519 B.R. 1, 8 (Bankr. D.P.R. 2014), quoting Otero-Lopez v. Dep't of Treasury of P.R. (In re Otero-Lopez), 492 B.R. 595, 607 (Bankr. D.P.R. 2013). To ensure compliance of the automatic stay, Section 362(k) of the Bankruptcy Code provides the necessary means to redress its violation: "an individual injured by a willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages". 11 U.S.C. § 362(k)(1). "A debtor seeking damages under this section bears the burden of proving by a

preponderance of the evidence the following three elements: (1) that a violation of the automatic stay occurred; (2) that the violation was willfully committed; and (3) that the debtor suffered damages as a result of the violation." Slabicki v. Gleason (In re Slabicki), 466 B.R. 572, 577-578 (1st Cir. BAP 2012), citing In re Panek, 402 B.R. 71, 76 (Bankr. D.Mass. 2009).

"A willful violation does not require a specific intent to violate the automatic stay." In re Otero, 492 B.R. at 607. "The standard for a willful violation of the automatic stay ... is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation." Fleet Mortgage Group v. Kaneb, 196 F.3d 265, 269 (1st Cir. 1999). "The debtor has the burden of providing the creditor with actual notice. Once the creditor receives actual notice, the burden shifts to the creditor to prevent violations of the automatic stay." Id. (citation omitted). "In cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate." Id. (citation omitted). "A violation may also be willful if the creditor's original action in violation of the stay occurred without notice of the bankruptcy filing, but it failed to take prompt action to remedy the violation after receipt of notice." Hon. W. Homer Drake, et al., Chapter 13 Practice & Procedure § 15:6 (June 2025 Update). Also see In re Abrams, 127 B.R. 239, 243-244 (9th Cir. BAP 1991); In re Combs, 2006 Bankr. LEXIS 3569, 2006 WL 6591825 (Bankr. N.D.Ga. 2006); In re Smith, 180 B.R. 311 (Bankr. N.D.Ga. 1995) (failure to vacate judgment entered post-petition constituted a willful violation of the automatic stay); Commercial Credit Corp. v. Reed, 154 B.R. 471, 476 (E.D.Tex. 1993) ("[A] creditor must act immediately to restore the status quo once it learns that it has violated the stay."); In re Warmer, 16 B.R. 216 (Bankr. N.D.Tex. 1981) ("A creditor has an affirmative duty to return the property and restore the status quo once it learns its actions violated the stay."); In re Miller, 10 B.R. 778 (Bankr. D.Md. 1981) (creditor has an affirmative obligation to return vehicle repossessed post-petition; failure to do so constituted a willful stay violation and supported an award of damages); In re Taylor, 190 B.R. 459, 461 (Bankr. S.D.Fla. 1995) ("once notice was given [to creditor] that the petition relief had been filed, [he] had an affirmative duty to undo the technical violation.").

(C)     Discussion

As an introductory matter, the court notes that Defendant filed Proof of Claim No. 5-1 in the amount of $172.28, that is, less than the $296.00 claimed by the Debtor in the Schedule E/F, and that the amounts owed on account of Debtor's pre-petition debt with Defendant were debited directly from Debtors' bank account. Therefore, the amounts deducted post-petition from Debtor's account appear to have been deducted from the amount owed. Moreover, the confirmed plan provides for the full payment of Defendant's claim, as a secured claim and for the amounts filed.

The court will focus on whether summary judgment in favor of Debtor-Plaintiffs is appropriate because the uncontested facts establish that Defendant violated the automatic stay provisions of Section 362(a). Although the facts do not show significant harm, even if the court were to finds in favor of Debtor-Plaintiffs, such a determination would only be considered after a finding that the Defendant is liable for a violation of the automatic stay.

The key to determining liability hinges on whether Defendant had knowledge of the stay and intended the actions which constituted the violation. Defendant has admitted having knowledge of the automatic stay. Thus, the second part remains to be established. Specific intent is not a requirement for there to be a willful violation of the automatic stay. However, the action should have been "intended".

The alleged collection actions were the post-petition deductions from debtors' account. The Defendant alleges that issues of timing and circumstances exist and given such ambiguities, "for example, whether an automated debit that occurred just days after notice was sent could have been stopped in time – the determination of willfulness should be reserved for trial." dkt. #69, p. 6. Such an allegation must be weighed with the fact that the proof of claim filed by the Defendant was for less than the amount scheduled by the Debtors. Thus, it appears that Defendant took an affirmative action to undo the violation and follow bankruptcy procedures for the payment of its debt.

Conclusion

In view of the foregoing, the court concludes that the Debtor-Plaintiffs have failed to establish, at this juncture, that the Defendant intended the actions and did not take corrective action to undue the same. Therefore, Debtor-Plaintiffs' *Motion for Summary Judgment* (dkt. #66) is hereby DENIED.

A status conference is hereby scheduled for January 26, 2026, at 10:00 AM.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 6th day of November 2025.

Enrique S. Lamoutte
United States Bankruptcy Judge

-11-